## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JAMES E. AKINS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Civil Case Nos. 92-1864, 00-1478,** |
| | ) | **03-2431 (RJL)** |
| **FEDERAL ELECTION COMMISSION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION
### (September 6 , 2010)

This consolidated matter is before the Court on the parties' cross-motions for summary judgment, seeking review of the Federal Election Commission's dismissal of multiple administrative complaints. The Court has carefully considered the parties' filings, relevant law, and the entire record herein. For the reasons set forth below, the plaintiffs' Motion for Summary Judgment is DENIED and the defendant's Cross-Motion for Summary Judgment is GRANTED.

## BACKGROUND

### A.    The Parties

Richard Curtiss, Paul Findley, Andrew Killgore, and Orin Parker (collectively, "plaintiffs") are former ambassadors, congressmen, or government officials.[1] They are politically active people who seek to influence policymakers and the public on U.S. policy

---

[1]      Three plaintiffs, James E. Akins, Robert J. Hanks, and George Ball, have died since this litigation was first commenced. Their deaths, however, do not affect the legal issues pending in this case.

in the Middle East. The plaintiffs hold many views contrary to those of the American Israel Public Affairs Committee ("AIPAC"). *See* 1st Am. Compl. ¶ 10, *Akins v. FEC*, No. 92-1864 ("*Akins I*"); 2d Am., 1st Supp. Compl. ¶ 10, *Akins v. FEC*, No. 00-1478 ("*Akins II*"); Compl. ¶ 8, *Akins v. FEC*, No. 03-2431 ("*Akins III*").

AIPAC is an incorporated, tax-exempt organization with over 50,000 supporters and a budget of about $10 million (as of 1989). It lobbies Congress and the Executive Branch for military and economic aid to Israel with the stated purpose to encourage close relations between the United States and Israel. AIPAC was the respondent in the underlying administrative matters before the Federal Election Commission, but it is not a party in the district court cases.[2] *See* 1st Am. Compl. ¶ 12, *Akins I*; 2d Am., 1st Supp. Compl. ¶ 12, *Akins II*; Compl. ¶ 10, *Akins III*; Pl.'s S. Mat'l Facts ¶¶ 1-2.

The defendant is the Federal Election Commission (the "FEC" or the "Commission"), an independent agency of the U.S. Government. The FEC has sole jurisdiction to civilly enforce the Federal Election Campaign Act of 1971, as amended, 2 U.S.C. § 431 *et seq.* (the "FECA" or the "Act"). 2 U.S.C. § 437c(b)(1).

**B.     The Federal Election Campaign Act**

The FECA's purposes are "to limit spending in federal election campaigns and to eliminate the actual or perceived pernicious influence over candidates for elective office

---

[2]     AIPAC was granted leave to file briefs as *amicus curiae* in *Akins I* and *Akins II* for prior motions. AIPAC did not seek leave to file for the currently pending cross-motions for summary judgment.

that wealthy individuals or corporations could achieve by financing the 'political warchests' of those candidates." *Orloski v. FEC*, 795 F.2d 156, 163 (D.C. Cir. 1986) (citing *Buckley v. Valeo*, 424 U.S. 1, 25-26 (1976)). To accomplish its goals, "[t]he Act imposes limits upon the amounts that individuals, corporations, 'political committees' (including political action committees), and political parties can contribute to a candidate for federal political office." *FEC v. Akins*, 524 U.S. 11, 14 (1998) ("*Akins Supreme Court Opinion*") (citing 2 U.S.C. §§ 441a(a)-(b), 441b).

Under the Act, all "political committees" are required to register with the Commission and make periodic reports of receipts and disbursements. 2 U.S.C. §§ 433, 434. A "political committee" is defined as "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year." 2 U.S.C. § 431(4)(A). Generally speaking, an "expenditure" is "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. § 431(9)(A).

The Act exempts from the definition of the term "expenditure" "any communications by any membership organization . . . to its members . . . if such membership organization . . . is not organized primarily for the purpose of influencing the nomination for election, or election, of any individual to Federal office." 2 U.S.C.

§ 431(9)(B)(iii). Simply put, membership communications by a membership organization that is not organized primarily for the purpose of influencing federal elections are not "expenditures" that count toward the $1,000 limit beyond which the organization can be classified as a "political committee." However, "the costs incurred by a membership organization . . . directly attributable to a communication expressly advocating the election or defeat of a clearly identified candidate (other than a communication primarily devoted to subjects other than the express advocacy of the election or defeat of a clearly identified candidate)[] shall, if such costs exceed $2,000 for any election, be reported to the Commission." *Id.* Membership organizations that trigger the reporting requirement must file disclosure reports in accordance with 2 U.S.C. § 434(a)(4)(A)(i) and (ii).

## C.    Procedural History

### 1.    MUR 2804

This case has had a long and complicated history. On January 12, 1989, plaintiffs filed their first administrative complaint with the FEC, designated Matter Under Review ("MUR") 2804, alleging, *inter alia*, that AIPAC was a political committee as defined by the Act and was thus required to make certain disclosures regarding its financial activities. First Certified Administrative Record ("F.A.R.") 4, 12-19 (refiled Oct. 14, 2005); Second Certified Administrative Record ("S.A.R.") 341 (filed June 6, 2004) (describing procedural history). Plaintiffs also claimed that AIPAC had made illegal corporate campaign expenditures in violation of 2 U.S.C. § 441b. F.A.R. 4, 12-19;

S.A.R. 341. AIPAC claimed that its communications to its members fell within the membership organization exception and, therefore, that it did not have to register as a political committee or disclose its financial activities to the FEC. F.A.R. 1460-1549; S.A.R. 341.

On June 16, 1992, the Commission voted 6-0 to find no probable cause to believe AIPAC was a political committee—and thus AIPAC was not subject to the registration and disclosure rules applicable to political committees—because AIPAC's "major purpose" was not to influence federal elections. F.A.R. 3771-72, 3871-72; S.A.R. 341-42. However, the Commission voted 4-2 to find probable cause that AIPAC had violated 2 U.S.C. § 441b by making corporate contributions, which consisted largely of election-related coordinated expenditures for communications to individuals who were not, under the Commission's view at the time, "members" of AIPAC.[3] F.A.R. 3771-72, 3871-72; S.A.R. 341. The FEC thought that the question of whether the individuals receiving this material were "members" was a "close question" and noted that it expected to undertake a regulatory proceeding in the near future to clarify the membership criteria. F.A.R. 3860-68, 3925-26. Ultimately, the Commission voted 6-0 to exercise its prosecutorial discretion to take no further action and dismiss the complaint. F.A.R. 3925-26; S.A.R. 341-42.

---

[3] The FEC found that, under the regulations then in force, the Executive Committee of AIPAC qualified as "members" of the organization and that communications to them were "membership communications." F.A.R. 3862, 3867.

## 2.    *Akins I*, No. 92-1864

Plaintiffs filed suit in our Court in 1992, challenging the FEC's determination that

AIPAC was not a "political committee." S.A.R. 342 (describing *Akins I*). They did not,

however, seek review of the membership organization issue. *Id.* A former member of

our Court granted summary judgment for the FEC in 1994, agreeing with the "major

purpose" test employed by the FEC to determine whether AIPAC qualified as a political

committee. *Akins I*, No. 92-1864, slip op. at 15-16 (D.D.C. Mar. 30, 1994). Plaintiffs

appealed, and a divided panel of our Court of Appeals affirmed. *See Akins v. FEC*, 66

F.3d 348 (D.C. Cir. 1995) ("*Akins Panel Opinion*"). Upon rehearing en banc, our Circuit

Court reversed, finding that the "major purpose" test was inapplicable in cases such as

this one that did not involve independent expenditures. *See Akins v. FEC*, 101 F.3d 731

(D.C. Cir. 1996) (en banc) ("*Akins En Banc Opinion*"). Unfortunately, this appellate

odyssey had only just begun!

The Supreme Court granted certiorari on the question whether an organization that

otherwise satisfies the Act's definition of a political committee nonetheless falls outside

of that definition because "its major purpose is not the nomination or election of

candidates." *Akins Supreme Court Opinion*, 524 U.S. at 26 (internal quotation marks

omitted).[4] Rather than addressing this issue, however, the Supreme Court noted that the

Commission had proposed new rules defining "membership organization" and vacated

---

[4]     The Supreme Court also granted certiorari on the question of standing and found that the
plaintiffs did have standing to bring suit in this case. *Akins Supreme Court Opinion*, 524 U.S. at
26.

our Circuit's en banc decision and remanded the case to the FEC to determine whether, under the new membership rules promulgated by the FEC, the communications at issue constituted membership communications and, therefore, fell outside the scope of expenditures that could qualify AIPAC as a "political committee." *Id.* at 28-29. The Court stated that "[i]f . . . the FEC decides that AIPAC's activities fall within the 'membership communications' exception, the matter will become moot." *Id.* at 29.

### 3. MUR 2804R

On March 21, 2000, under its newly revised membership regulations, the FEC first found that members of AIPAC met the definition of "members" in the new regulations, a finding that is undisputed. F.A.R. Supp. 3980 (filed Oct. 2, 2000)[5]; S.A.R. 343; *see* 11 C.F.R. § 114.1(e)(2) (2000). The FEC then voted 6-0 to find that AIPAC was a "membership organization" under the new regulations. F.A.R. Supp. 3979-82, 3986; S.A.R. 343. Among other requirements, the regulation specifies that a membership organization "[i]s not organized primarily for the purpose of influencing the nomination for election, or election, of any individual to Federal office." 11 C.F.R. § 114.1(e)(1)(vi) (2000).[6] The Commission concluded that the facts that had originally led it to conclude

---

[5]    This Supplement to the First Certified Administrative Record constitutes the administrative record for MUR 2804R.

[6]    The new regulations defined a "membership organization" as an organization that:

    (i)      Is composed of members, some or all of whom are vested with the power and authority to operate or administer the organization, pursuant to the organization's articles, bylaws, constitution or other formal organizational documents;

    (ii)    Expressly states the qualifications and requirements for membership in its articles, bylaws, constitution or other formal organizational documents;

that election activity was not AIPAC's "major purpose" were enough to establish *a fortiori* that AIPAC was not organized "primarily" for that purpose. F.A.R. Supp. 3982. This is the *only* requirement under the regulations defining "membership organizations" that is contested by the plaintiffs in the instant action. The FEC concluded that AIPAC's disbursements for election-related communications were exempt from the definition of "expenditures" because they were made to AIPAC's "members." F.A.R. Supp. 3982-83. The FEC found that "the issue of AIPAC's political committee status during the period covered by the complaint in MUR 2804 has, as anticipated by the U.S. Supreme Court, become effectively moot." F.A.R. Supp. 3983. Accordingly, the Commission adhered to its earlier determination that there was no probable cause to believe that AIPAC violated 2 U.S.C. §§ 433 and 434. F.A.R. Supp. 3986.

### 4. *Akins II*, No. 00-1478

In 2000, plaintiffs again filed suit in our Court, now seeking review of the FEC's determination that AIPAC was a membership organization. *Akins II*, No. 00-1478 (D.D.C. filed *nunc pro tunc* to May 19, 2000). *Akins II* was consolidated for all purposes with *Akins I*. The parties filed cross-motions for summary judgment. Plaintiffs made two

---

(iii) Makes its articles, bylaws, constitution, or other formal organizational documents available to its members upon request;

(iv) Expressly solicits persons to become members;

(v) Expressly acknowledges the acceptance of membership, such as by sending a membership card or including the member's name on a membership newsletter list; and

(vi) *Is not organized primarily for the purpose of influencing the nomination for election, or election, of any individual to Federal office.*

11 C.F.R. § 114.1(e)(1) (2000) (emphasis added).

arguments: (1) that the FEC erred in determining that AIPAC was a membership organization and that its communications were to members and (2) that AIPAC's communications expressly advocated the election of clearly identified candidates and cost more than $2,000 per election and thus had to be reported pursuant to the Act. The FEC responded that it had never been presented with the plaintiffs' second argument. On May 20, 2002, the plaintiffs filed a new administrative complaint before the Commission, designated MUR 5272, making the express advocacy argument. S.A.R. 15-24. The consolidated case in the District Court was stayed by a now deceased member of our Court pending the resolution of MUR 5272. Order Staying Proceedings, *Akins II*, No. 00-1478 (D.D.C. Aug. 15, 2003).

### 5.    MUR 5272

In MUR 5272, plaintiffs argued that even if the membership communication exemption applies, AIPAC is required to report its membership communications in excess of $2,000 under 2 U.S.C. § 431(9)(B)(iii) because they are "communication[s] expressly advocating the election or defeat of . . . clearly identified candidate[s]." S.A.R. 15-24. On November 13, 2003, the FEC dismissed the complaint as a matter of prosecutorial discretion, noting that in the complaint for MUR 5272, the plaintiffs did not cite any specific instances of communications containing express advocacy. S.A.R. 344-45. The Commission reviewed the material from the earlier MUR and the information submitted by AIPAC in its response to MUR 5272 and concluded that although there may have been

9

"isolated instances" when AIPAC's communications extended from issue advocacy to express advocacy, there was no indication that the costs associated with these communications exceeded the $2,000 threshold or that these communications continued after 1990. S.A.R. 345. The Commission reasoned that any further investigation would be frustrated by problems of proof and the expiration of the applicable statute of limitations and concluded that it would not be an appropriate use of the FEC's limited resources. *Id.*

### 6.    *Akins III*, No. 03-2431

Undaunted, plaintiffs filed a third suit in our Court, seeking review of the FEC's decision to dismiss MUR 5272. *Akins III*, No. 03-2431 (D.D.C. filed Nov. 25, 2003). On October 25, 2007, following the death of the presiding District Judge, all three related cases were reassigned to this Court by our Calendar Committee. *Akins III* was consolidated with *Akins I* and *Akins II*. The parties then filed the currently pending cross-motions for summary judgment in 2009.

## DISCUSSION

### A.    Standard of Review

The standard to be applied in reviewing a decision by the FEC not to prosecute is whether the FEC has acted "contrary to law." *Orloski*, 795 F.2d at 161 (citing 2 U.S.C. § 437g(a)(8)(C)). "The FEC's decision is 'contrary to law' if (1) the FEC dismissed the complaint as a result of an impermissible interpretation of the Act or (2) if the FEC's

dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion." *Id.* (internal citation omitted). In determining whether the Commission's action was contrary to law, a reviewing court is "not to interpret the statute as it [thinks] best but rather the narrower inquiry into whether the Commission's construction was 'sufficiently reasonable' to be accepted by a reviewing court." *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 39 (1981) ("*DSCC*"). "To satisfy this standard it is not necessary for a court to find that the agency's construction was the only reasonable one or even the reading the court would have reached" on its own. *Id.* The arbitrary, capricious, or abuse of discretion standard is "an extremely deferential standard which requires affirmance if a rational basis for the agency's decision is shown." *Orloski*, 795 F.2d at 167 (internal quotation marks and citation omitted).

## B.  Analysis

### 1.  Waiver

The Commission first argues that the plaintiffs waived their challenge to the Commission's determination that AIPAC was a membership organization. This claim is based on the fact that the plaintiffs did not seek review of the Commission's finding in MUR 2804 that AIPAC did not violate 2 U.S.C. § 441b through its communications to members of its Executive Committee, who did qualify as "members" of AIPAC under the regulations in force at that time. The FEC asserts that the only question on remand was

whether additional individuals, outside of the executive board, qualified as "members," since the "organized primarily for the purpose of influencing" federal elections language was already in the statute during MUR 2804. In response, the plaintiffs draw a distinction between the Commission's 1992 determination that the Executive Committee was not "organized primarily" for the purpose of influencing elections and the currently pending issue of whether the entire 50,000 "membership organization" is "organized primarily" for that purpose. I agree.

The Supreme Court's remand required the FEC to revisit whether AIPAC was organized primarily for the purpose of influencing federal elections. As described above, the Court granted certiorari on the issue of the definition of "political committee," but the Court then chose not to address that issue and instead directed the Commission to reconsider the issue of AIPAC's membership organization status under the newly revised regulations. *See Akins Supreme Court Opinion*, 524 U.S. at 29.[7] It would be ridiculous to say that the Supreme Court ordered the FEC to issue a new determination under a new set of rules, but barred any judicial review of that determination. In fact, the Supreme Court specifically contemplated judicial review. *See id.* (noting that the FEC's remand determination would either moot the political committee issue or allow the "lower courts, in reconsidering the respondents' arguments" to evaluate the communicative context of

---

[7]     To that end, when the en banc D.C. Circuit issued its vacate and remand order following the Supreme Court's decision, Judge Silberman wrote separately to note certain unusual circumstances of the case. *See Akins v. FEC*, 146 F.3d 1049 (D.C. Cir. 1998) (*per curiam*) (Silberman, J., writing separately).

the case). Thus, there was no waiver.[8]

## 2.  "Organized Primarily"

The FEC found that AIPAC was not "organized primarily for the purpose of influencing" elections, within the meaning of 2 U.S.C. § 431(9)(B)(iii) based on the FEC's finding in MUR 2804 that "[t]he evidence shows that AIPAC is primarily . . . a lobbying organization." F.A.R. 3772; *see* F.A.R. Supp. 3982.  The plaintiffs argue that in making this determination, the FEC erred by failing to consider whether AIPAC's lobbying efforts were primarily based on campaign-related activities and communications that influence elections.  In other words, the plaintiffs argue that AIPAC should not be considered a "membership organization" by virtue of the "organized primarily" clause of § 431(9)(B)(iii) because AIPAC is primarily organized for the purpose of lobbying that is primarily focused on influencing elections.  Plaintiffs assert that the FEC's opposing view is contrary to law because it is at odds with the purpose of the Act.  Plaintiffs also argue that the FEC failed to consider whether AIPAC's lobbying is primarily quid pro quo lobbying, i.e., demands that members of Congress vote for legislation and appropriations favored by AIPAC in return for AIPAC's support, which plaintiffs assert is prohibited under the Act.

---

[8]      The Commission also argues that even if the plaintiffs have not waived their claim, any post-remand claims are barred because the plaintiffs did not present any arguments to the Commission when the matter was remanded by the Supreme Court.  Not so.  The plaintiffs had no *duty* to present their arguments to the FEC on remand and, further, they were not permitted to do so under the regulations.  *See* 11 C.F.R. § 111.22.  Thus, for similar reasons to finding no waiver, I find no bar on the plaintiffs' arguments, particularly in light of the fact that the Commission does not cite a single FEC case to support its position that such a bar exists.

13

The FEC responds that its conclusion that AIPAC was primarily a lobbying organization was firmly rooted in the record before the FEC and included an extensive review of AIPAC's by-laws, its history, and its organizational structure and activities. The Commission argues that the plaintiffs' suggestion that AIPAC was involved in quid pro quo lobbying is squarely addressed under criminal bribery statutes, rather than under the FECA. Furthermore, the FEC asserts that Explanation and Justification issued with the new membership regulations indicate that the requirement not to be organized primarily for the purpose of influencing federal elections was intended to prevent individuals from establishing sham membership organizations to circumvent the Act's contribution and expenditure limits. Such a sham, according to the Commission, is clearly not in issue here, given AIPAC's primary focus on lobbying, which it has actively conducted for more than forty years. The FEC argues that plaintiffs have provided no support for bootstrapping the primacy of AIPAC's lobbying efforts into federal election activity by arguing that its lobbying is primarily based on campaign-related activities. According to the Commission, the proper forum for such an argument eliding the distinction between lobbying and electioneering is Congress, not the Courts. For the following reasons, I agree with the FEC.

As an initial matter, the Commission's interpretation of the Act's "organized primarily" language regarding membership organizations is to be given deference. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984) ("[I]f the

statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."); *see also DSCC*, 454 U.S. at 37 (stating the Commission "is precisely the type of agency to which deference should presumptively be afforded"). As the FEC explained in the Explanation and Justification issued with the new membership regulations, the membership communications exception "addresses [the] concern that an organization not be used as a conduit by a candidate or other outside entity seeking to influence unlawfully a Federal election." Definition of "Member" of a Membership Organization, 64 Fed. Reg. 41266, 41269 (July 30, 1999). To that end, "[s]ince the purpose of the Act's 'membership communications' exception is to allow bona fide membership organizations to engage in political communications with their members, these rules are intended to prevent individuals from establishing 'sham' membership organizations in an effort to circumvent the Act's contribution and expenditure limits." *Id.* This interpretation of the membership communications exemption language is "sufficiently reasonable" as to be accepted by this Court and entirely consistent with the purpose of the Act. *See DSCC*, 454 U.S. at 39; *see also Buckley*, 424 U.S. at 26 (stating that the Act's primary interest is "to limit the actuality and appearance of corruption resulting from large individual financial contributions").

Plaintiff's arguments that the Commission's interpretation does not go far enough to effectuate the purposes of the Act provides no basis for this Court to expand it. While

the dividing line between lobbying and electioneering may be, at times, hard to draw, and lobbying efforts may be, at times, linked to influencing elections, nothing in the Act indicates that the Commission acted contrary to law by refusing to equate lobbying in general—and AIPAC's lobbying in particular—with efforts to influence federal elections. Rather, the FEC's determination that the membership communications exception be construed as an effort to prevent "sham" membership organizations from circumventing the campaign finance rules is completely consistent with the FECA's purpose. "'[N]o legislation pursues its purposes at all costs. . . . [I]t frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law.'" *Albany Eng'g Corp. v. Fed. Energy Regulatory Comm'n*, 548 F.3d 1071, 1076 (D.C. Cir. 2008) (quoting *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) (emphasis in original)). Stated simply, such an approach makes sense in this case, especially given the deference due to the Commission in interpreting and enforcing the Act. Accordingly, the Commission did *not* act contrary to law by maintaining a distinction between an organization primarily devoted to lobbying and one organized primarily to influence elections.

Furthermore, the Commission's decision under its interpretation of the Act not to prosecute AIPAC was neither arbitrary or capricious, nor an abuse of discretion. In 1992, the FEC concluded in MUR 2804 that AIPAC was not a "political committee" because the nomination or election of candidates was not AIPAC's "major purpose":

AIPAC's campaign related activities, while likely to have crossed the $1,000 threshold, constitute only a small portion of its overall activities and does not appear to be its major purpose. The evidence shows that AIPAC is primarily and fundamentally a lobbying organization interested in U.S.-Israel relations and in legislation affecting Israel. Its campaign-related activities and communications are undertaken as an adjunct to, and in support of, its lobbying efforts.

F.A.R. 3772. In 2000, the FEC stated in MUR 2804R that the facts that had led it to conclude that election activity was not AIPAC's "major purpose" were enough to establish *a fortiori* that AIPAC was not organized "primarily" for that purpose:

Another requirement of membership organizations set out at new 11 C.F.R. § 114.[1](e)(1) is that a potential membership organization "not be organized primarily for the purpose of influencing" federal elections. This was the conclusion reached in MUR 2804 with regard to AIPAC, with the result that the Commission found no probable cause to believe that the organization had violated 2 U.S.C. §§ 433 and 434.

F.A.R. Supp. 3982. Although such reasoning is susceptible to the accusation of conflating two different tests—the "major purpose" test that the Commission used for political committees and the "organized primarily" test for membership organizations—such a result is also logically *unavoidable*. After all, if influencing federal elections is not a major purpose of AIPAC, then AIPAC cannot be organized primarily to influence federal elections.[9]

---

[9] The plaintiffs also argue that the FEC should be required to clarify what it means by "major purpose" and to state whether an organization can have more than one "major purpose." The FEC responds that this argument is irrelevant because the General Counsel's report originally dismissing the plaintiffs' complaint stated that "AIPAC's political activities did not rise to such a level as to make them *a major purpose* of the organization." Def.'s Reply 7 (quoting F.A.R. 3672) (emphasis added). I agree with the FEC that even if an organization could be organized primarily for more than one "major purpose," it would be inconsequential in this situation because the Commission has already determined that AIPAC did not have even "a"

17

The Commission's decision in MUR 2804 that formed the basis of its decision in MUR 2804R resulted from an extensive investigation and development of a substantial administrative record documenting AIPAC's political interests, finances, and campaign-related activities. AIPAC was incorporated in 1963 as a non-profit organization with the "sole function," as a registered domestic lobby, to encourage close U.S.-Israel relations and to provide services to its own members. F.A.R. 1469. Based on a careful review of the administrative record and the parties' arguments, I find no evidence that AIPAC's focus on lobbying for more than forty years has been a sham perpetrated to circumvent the Act's contribution and expenditure limits. Accordingly, I find that the Commission had a rational basis to conclude that AIPAC was not "organized primarily" for the purpose of influencing federal elections. Therefore, the Commission's decision not to prosecute AIPAC was not an act contrary to the law.

### 3. Communications "by" Candidates

Plaintiffs next argue that the FEC improperly failed to consider whether AIPAC's communications should be disentitled to the membership communications exemption because they solicit campaign contributions for and are coordinated with candidates and therefore are communications "by" the candidates. Essentially, plaintiffs argue that communications by AIPAC to its members were in such close coordination with candidates that they create an appearance, and danger, of quid pro quo corruption. I

---

major purpose to influence elections. Thus, remand for clarification on this point is unnecessary. The Court also notes that the FEC's General Counsel indicated that election-related activities were a "small portion" of AIPAC's activities overall. *See* F.A.R. 3772.

disagree. If the communications were in fact "by" the candidates, any disclosure

obligation would then fall on the candidate. Indeed, coordination with candidates is

explicitly provided for within the statutory exemption for membership communications,

*see* 11 C.F.R. § 114.3(a), and the Supreme Court and our Circuit adjudicated this case

based upon the assumption that AIPAC's communications to its supporters *had been*

coordinated with candidates. As such, the plaintiffs are, in essence, asking this Court to

invalidate the regulation: a request that is neither procedurally possible nor legally

sustainable. How so?

The Commission's regulations state that communications to members are within

the statutory exemption for membership communications even if they "involve election-

related coordination with candidates." 11 C.F.R. § 114.3(a)(1). Plaintiffs have failed to

advance any legal basis for why the FEC should not be afforded deference in its

construction of the Act. Moreover, the Supreme Court and our Circuit Court assumed

that there had been coordination with the candidates. *See Akins Supreme Court Opinion*,

524 U.S. at 28; *Akins En Banc Opinion*, 101 F.3d at 744 ("There is no contention that

AIPAC's disbursements were independent expenditures."). There would have been no

reason for the Supreme Court to remand the case to the Commission if coordination had

been enough, alone, to disqualify AIPAC's reliance on this exemption. Accordingly, I

find that the FEC did not improperly fail to consider whether AIPAC's communications

were in fact communications "by" the candidates.

19

### 4. Adequacy of Investigation

Plaintiffs next argue that the Commission improperly failed to adequately investigate whether AIPAC's non-communication expenditures in past elections make it a political committee. I disagree.

The FEC has broad discretionary power in determining whether to investigate a claim, and how, and whether to pursue civil enforcement under the Act. Plaintiffs' speculation based on twenty-year-old evidence about what may have turned up in further investigation falls far short of proving an abuse of discretion. The Commission's investigation, pursuant to the Supreme Court's remand instructions, was properly ended after the Commission determined that AIPAC's activities fell within the membership communications exemption. Indeed, the prosecutorial discretion given to the Commission is entitled to great deference as to the manner in which it conducts investigations and its decisions to dismiss complaints, provided it supplies reasonable grounds. *See Democratic Cong. Campaign Comm. v. FEC*, 831 F.2d 1131, 1134 (D.C. Cir. 1987); *Common Cause v. FEC*, 655 F. Supp. 619, 623 (D.D.C. 1986), *rev'd on other grounds*, 842 F.2d 436 (D.C. Cir. 1988). Here, the FEC's investigation of AIPAC in MUR 2804 and MUR 2804R produced an exhaustive administrative record totaling almost 4000 pages in twelve volumes, which was summarized in three lengthy General Counsel's Reports. *See* F.A.R. 3671-3778, 3842-69; F.A.R. Supp. 3964-85. Moreover, due to the lengthy history of this case, many courts have already reviewed the adequacy of

the FEC's investigation. To date, none have found the FEC's work inadequate.[10] As such, plaintiff's argument that further investigation is *likely* to find evidence of "similar activities now" is purely speculative and inconsistent with the heavy burden it has to establish an abuse of discretion.

First, plaintiffs' argument depends on "similar activities" both existing and, unlike in the past, rising to a significant level. Plaintiffs's simple disagreement with the results of the FEC's earlier investigation, however, is not enough to warrant further action. *See Common Cause*, 655 F. Supp. at 623; *see also FEC v. Rose*, 806 F.2d 1081, 1091 (D.C. Cir. 1986) ("It is not for the judiciary to run roughshod over agency procedures or sit as a board of superintend[e]nce directing where limited agency resources will be devoted."). Absent evidence that the Commission's investigation was so inadequate as to constitute an abuse of discretion, it is not this Court's place to direct the Commission how to expend its resources, and it is certainly not the plaintiffs'. Indeed, the Supreme Court itself merely directed the Commission to consider whether AIPAC was a political committee only if the Commission decided that AIPAC's spending did not qualify as membership communications. *See Akins Supreme Court Opinion*, 524 U.S. at 29 ("If . . . the FEC decides that AIPAC's activities fall within the 'membership communications' exception,

---

[10]     Although the D.C. Circuit noted that the investigation may have been insufficient, that comment was directed to the FEC's investigation into whether AIPAC's contributions were a major purpose of the organization. That determination is not at issue on remand, and the D.C. Circuit's comment was dicta in a footnote in an opinion that was later vacated. *See Akins En Banc Opinion*, 101 F.3d at 744 n.13. In contrast, the District Court and the original panel of the D.C. Circuit found that the FEC had conducted an extensive investigation. *See Akins Panel Opinion*, 66 F.3d at 355; *Akins I*, No. 92-1864, slip op. at 17.

the matter will become moot."). The political committee question has thus become moot.

### 5. Express Advocacy

Finally, the plaintiffs argue that the FEC improperly failed to find that AIPAC's past membership communications constituted "express advocacy," thereby warranting an investigation into AIPAC's current membership communications. Specifically, plaintiffs contend that the combination of (1) communications from AIPAC urging its members to choose candidates to support, either financially or by working in their campaigns, and (2) Campaign Update reports deeming candidates who received the highest ratings on issues relevant to AIPAC as deserving of support triggers the "express advocacy" exception of 2 U.S.C. § 431(9)(B)(iii). Moreover, plaintiffs assert that the FEC erroneously limited its assessment of which communications crossed the $2,000 threshold to certain isolated incidents, rather than considering the costs involved in creating the above combination as well as AIPAC's routine, widespread membership communications.[11] As to each of their arguments, I disagree.

Supreme Court precedent indicates that for a communication to constitute "express advocacy," it must "in express terms advocate the election or defeat of a clearly identified candidate for federal office" by using words "such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' 'reject.'" *Buckley*, 424 U.S. at 44 & n.52. In *Federal Election Commission v. Massachusetts Citizens for Life*,

---

[11] Plaintiffs also argue that the FEC's assertion that their allegations were barred by the applicable statute of limitations was contrary to law and, regardless, there is no reason to believe AIPAC has not continued its election-related membership communications to the present day.

the Court found that a publication that "urges voters to vote for 'pro-life' candidates" and "identifies and provides photographs of specific candidates fitting that description" constituted express advocacy, even though "this message is marginally less direct than 'Vote for Smith.'" 479 U.S. 238, 249 (1986) ("*MCFL*"). In contrast, in *Federal Election Commission v. Christian Coalition*, the District Court found that a communication including both a scorecard with candidates' voting records and a cover letter explaining that the scorecard "'will give America's Christian voters the facts they need to distinguish between GOOD and MISGUIDED Congressmen'" was not express advocacy. 52 F. Supp. 2d 45, 64-65 (D.D.C. 1999) (quoting cover letter). The District Court in *Christian Coalition* also found that explicit directives such as "stand together," "get organized," and "start now," all for the purpose of "making our voices heard in the elections" fell short of express advocacy. *Id.* at 64.

Here, the plaintiffs argue that the combination of communications urging AIPAC members to support unidentified candidates with "Campaign Update" reports that include information identifying which candidates rate best on issues relevant to AIPAC are, in effect, express advocacy. Fiddlesticks! Putting aside the substantial problem of proof as to whether any individual AIPAC members actually received both of these communications within a close enough period of time to even suggest they should be read together, and the novel legal question of whether two communications can even be combined in this manner to constitute express advocacy, this proposed combination falls

far short of the "pointed exhortations to vote for particular persons" that is required for express advocacy. *MCFL*, 479 U.S. at 249. Communications from AIPAC that state, "We urge you to choose candidates to support and we urge you to support them financially or by working in their campaigns," stand in sharp contrast to the newsletter at issue in *MCFL*, which urged its members to "vote pro-life" and then, in the same document, identified by name and picture the candidates who were "pro-life." *See id.* at 249. The Campaign Update reports that plaintiffs rely on as identifying particular candidates for AIPAC members to support consisted primarily of voting records and electoral prospects of candidates, similar to the scorecards found in *Christian Coalition*. *See* F.A.R. 3700; *see, e.g.*, S.A.R. 123-24 (describing Lawton Chiles' voting record and re-election prospects); *see also* 2 U.S.C. § 431 (9)(B)(iii) (carving out communications "primarily devoted to subjects other than . . . express advocacy" from the express advocacy exception to membership communications). Urging organization members to become politically active in general, or even to lobby incumbents on certain issues, is not express advocacy. *See Christian Coalition*, 52 F. Supp. 2d at 64. The general categories of communications plaintiffs attempt to bundle together fall closer to the line drawn in *Christian Coalition* than those in *MCFL*. Not surprisingly, plaintiffs failed in both their administrative complaint and in their pleadings before this Court to identify a single specific instance of express advocacy.[12] *See* S.A.R. 345. Therefore, the Court finds no

---

[12]  Plaintiffs' remaining arguments regarding MUR 5272 are premised on the first one and thus also fail. The Commission did not erroneously limit its consideration of costs by refusing to consider the costs in creating the above-described combination of communications or the cost of

abuse of discretion with respect to the plaintiffs' express advocacy allegations.

## CONCLUSION

This never ending legal saga has spanned almost twenty years, multiple administrative complaints, and the careers of numerous Judges and Justices. To say the least, the time to complete the judicial review of these FEC decisions is long overdue. While time will tell what role, if any, this Opinion will have played in this interminable legal drama, I certainly trust that I will be the last District Judge that has to wrestle with this seemingly inexhaustible Hydra.

In the meantime, for all of the foregoing reasons, the Court DENIES the plaintiffs' Motion for Summary Judgment, GRANTS the defendant's Cross-Motion for Summary Judgment, and DISMISSES the action in its entirety. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

AIPAC's membership communications in general. *See* 2 U.S.C. § 431(9)(B)(iii) (requiring spending be "*directly* attributable to a communication expressly advocating the election or defeat of a clearly identified candidate" (emphasis added)). Finally, the Commission acted within its prosecutorial discretion in considering the lack of evidence supporting the plaintiffs' position. *See Common Cause*, 655 F. Supp. at 623. Regardless, because the plaintiffs' combination approach to express advocacy is fatally flawed, any further investigation into similar present-day communications would have been pointless.